## THE PEOPLE, *ex rel.* COOK, *v.* NEARING *et al.*

Digging a ditch upon the land of a private owner, under the authority of the legislature, for the purpose of draining such land and that of the adjoining proprietors, is, *it seems*, a taking of property within art. 1, §§ 6, 7, of the Constitution of 1846; and the act of the legislature professing to authorize such taking is so far void, unless it provides for the payment of a just compensation, to be ascertained by a jury or by commissioners appointed by a court of record.

The mode, however, of apportioning and assessing such compensation and the expenses of executing the work, upon those benefited thereby, is wholly within the discretion of the legislature.

pon a certiorari to the commissioners charged with the execution of such a work, and the assessment of the expenses of its execution, the only question brought up is on the legality and regularity of their proceedings in making the assessment.

The relator's remedy for the invasion of his land is trespass or ejectment.

WRIT of error to the Supreme Court. The return showed a writ of certiorari from that court to the defendants, as commissioners, under certain acts of the legislature, for draining

certain wet and swamp lands in the county of Onondaga. It recited that the defendants had caused a ditch or drain to be dug through the land of Robert Cook, the relator, to his serious damage and loss; and that the defendants had made an assessment upon the lands of the relator and others for the purpose of defraying the expenses of the several drains and ditches mentioned in the act, and had advertised the lands of Cook and others for sale for non-payment of such assessment. The writ required a return of all the proceedings of the defendants, as commissioners under said drainage acts. The defendants made a return, only so much of which appeared in the error book as admitted that they had cut the ditches under the authority of the acts referred to: that they had assessed the expenses; that the relator had appealed from such assessment to the County Court, which appointed new commissioners, who made a new assessment, the collection of which the defendants were proceeding to enforce by a sale of the relator's lands.

It appeared that the parties, by stipulation, submitted to the Supreme Court only the constitutionality of the acts of the legislature authorizing the proceedings of the defendants. The court, at general term in the fifth district, held the acts to be constitutional, and rendered judgment confirming the proceedings of the commissioners in cutting the drains and in collecting the assessments. The relator appealed to this court, where the cause was submitted on printed briefs, by

*D. & D. F. Gott,* for the appellant.

*Pratt & Mitchell,* for the respondents.

DAVIES, J. The certiorari avers, and it is admitted by the return, that the defendants have entered upon the relator's land, and have caused and procured a ditch or drain to be cut or dug upon the said land, for the distance of about one hundred and seventy rods. The respondents claim the right so to do, under and by virtue of an act of the legislature passed April 16, 1858. (Laws of 1858, ch. 266.) This act was

amended in 1860. (Laws of 1860, ch. 258.) By the original act, the commissioners named therein were authorized to drain certain wet and swamp lands therein described, and for that purpose to cut the necessary ditch and side drains of sufficient depth and width to drain the lands aforesaid. The commissioners were authorized to enter upon and occupy such lands as might be necessary for the execution of the work authorized by the act. In pursuance of such authority, they entered upon and occupied the lands of the relator, and dug thereon the ditch above mentioned. This, I think, may be regarded as a taking or appropriation of the relator's lands for a public purpose, and which could not be lawfully done without provision being made for a just recompense or compensation therefor.

Accordingly, it was provided, by the seventh section of the act, that the expenses incurred by the commissioners in the performance of their duties, and any damages resulting as a consequence of such work, should be justly and equitably assessed by the said commissioners upon the owners of the lands benefited thereby. This assessment for benefit could rightfully be made by the commissioners under the authority of the legislature. There is no constitutional provision having any application to such an assessment. The persons by whom, and the mode and manner of making it, are subject only to legislative discretion. The compensation for the land taken, or, in the language of the act authorizing this work to be done, the damage resulting as a consequence of performing it, must, in conformity with the provisions of the Constitution, be ascertained by a jury, or by not less than three commissioners, appointed by a court of record. (Cons. of 1846, § 7, art. 1.)

The compensation or damage, therefore, could only be fixed by a jury, or by the commissioners appointed by a court of record; and it was not competent for the legislature to appoint commissioners to fix the same, or devolve the duty upon any body or set of men, other than those indicated by the Constitution. When such compensation or damage had been constitutionally fixed and ascertained, then the legislature might

lawfully direct the mode and manner of assessing or apportioning said damages upon the persons or property benefited thereby, and designate or appoint the persons to make such assessment or apportionment. (*People* v. *Mayor of Brooklyn*, 4 Comst., 419.) The act of 1860 does not obviate the difficulty and remove the objections suggested. By that act, provision is made that if any person shall deem himself aggrieved by the assessment made by the commissioners, that is, the assessment or apportionment of benefit made by them, such person may appeal to the County Court, who shall, thereupon, appoint three commissioners to reassess the expenses of said improvement and such expenses. This is the only authority, conferred by the act of 1860, upon the commissioners appointed by the County Court, and therefore they could not, and we must assume that they did not, ascertain and fix any damages or compensation to the relator, for the taking and appropriating of his land for the purposes of such improvement. The acts in question having, therefore, made no legal provision for the ascertainment of the compensation to be paid to the relator, for the taking and appropriating of his land for the purposes of the act, or made any provision for the payment of such compensation or damage, they must be held to be unconstitutional in this respect, and the relator will have his legal remedy for the trespass, if any, which may have been committed. But it was perfectly competent, as has already been observed, for the commissioners appointed by the legislature, or those selected by the County Court, to make the assessment or apportionment of the expenses or damages incurred in performing the work, upon the persons and property benefited thereby. It is not suggested, that either set of commissioners have made such assessment upon any erroneous principle, or that any legal rules have been violated. It is not suggested, that such expenses or damages have not been assessed or apportioned upon all the lands benefited by the improvement, justly and reasonably ; and there is, therefore, no legal reason appearing why this assessment should be vacated and set aside. The Supreme Court would have been fully authorized, by well

settled authority, upon the facts appearing in this case, to have quashed the certiorari issued therein. (*People* v. *Mayor of N. Y.*, 5 Barb., 43, and cases there cited.) In my opinion, the assessment made, either by the commissioners appointed by the legislature, or that made by the commissioners selected by the County Court, is not shown to be illegal; and the judgment of the Supreme Court should be affirmed, with costs.

All the judges were for affirmance. DENIO, Ch. J., SELDEN, EMOTT, ROSEKRANS and MARVIN, Js., thought the acts unconstitutional, in not providing for compensation to the owners of the lands occupied by the ditches; WRIGHT, J., thought otherwise; BALCOM, J., reserved his opinion on that point; ROSEKRANS, J., thought that no assessment could be made under the acts, and was for affirmance on account of the defectiveness of the error book.

Judgment affirmed.