In the Matter of the Petition of Charles A. Cheesebrough to Vacate an Assessment.

Lands cannot be permanently appropriated for drains for the benefit of other lands, under the police power of the State or otherwise, without compensation.

Under and in conformity with the act of 1871, providing for the drainage of lands in the city of New York (chap. 566, Laws of 1871), permanent blind drains were constructed upon the lands of C. and others, the outlet of all being through C.'s lands into a river.   C.'s lands were dry having natural drainage, and were in no way benefited by the drains.   C. did not consent to the construction of the drains.   In proceedings to vacate an assessment upon C.'s lands for the expenses, *held*, that said statute did not, and no statute could, confer authority to construct the drains through C.'s lands without his consent and without compensation for the land taken; that the construction therefore was a trespass and an assessment to pay the cost thereof could not legally be laid.

(Argued June 17, 1879; decided September 17, 1879.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, affirming an order of Special Term which vacated an assessment upon lands of the petitioner for certain blind drains.   (Reported below, **17 Hun**, 561.)

The facts appear sufficiently in the opinion.

*Francis Lynde Stetson* and *John A. Beall*, for appellant. The assessment in question was imposed in strict accordance with all the requirements of law and is unaffected by any irregularity.   (Laws of 1871, chap. 566, §§ 1, 2, 3; *Greene* v. *Mayor, etc.*, 60 N. Y., 303; *In re Zborowski*, 68 id., 88.) It was imposed for a lawful object and for expenses incurred in the lawful exercise of the police power of the State of New York.   (Cooley's Const. Lim. [2d ed.], 572; *Papenger Cases*, 7 How. [U. S.], 283–423; *In re Townsend*, 39 N. Y., 171– 174, 181, 182; *Varick* v. *Smith*, 5 Paige, 137–160; Potter's Dwarris on Stat., 445–447, 455, 463; Dillon on Municipal Corp., § 93; Sedgwick on Const. Law, 423, 434, 473; *Comm.* v. *Alger*, 7 Cush., 84; *Baker* v. *Boston*, 12 Pick., 183; *Deugley* v. *Boston*, 100 Mass., 544; *Thorpe* v. *R. and B. R. R. Co.*, 27 Vt., 149; *Tidewater Co.* v. *Coster*, 3 C. E. Green, 519–531; *State* v. *Blake*, 36 N. J. Law, 442–447; *Anderson* v. *Kerns Drainage Co.*, 14 Ind., 199–202; *O'Rieley* v. *Kankakee Co.*, 32 id., 169–191; *Presb. Church* v. *Mayor*, 5 Cow., 538; *Vanderbilt* v. *Adams*, 7 id., 349–351; *Stuyve-*

sant v. *Mayor*, 15 Wend., 262; *Meeker* v. *Van Rensselaer*, 15 id., 397; *Campbell* v. *Evans*, 45 N. Y., 356; *Matter of Ryres*, 72 id., 1; *Pool* v. *Tucker*, 76 N. C., 297; *Commonwealth* v. *Tewksbury*, 11 Metc., 55; *Cooper* v. *Schultz*, 32 How., 107–121; *Coe* v. *Schultz*, 47 Barb., 64–70; *Stuyvesant* v. *Mayor*, 7 Cow., 588–605; Const. Lim., 595–596; *In re Ryers*, 72 N. Y., 7.)    The act under which the assessment was laid was not violative of the constitution. (Burroughs on Taxation, 496; Cooley on Taxation, 402–423; *Tidewater Co.* v. *Coster*, 4 C. E. Green, 519–531; *State* v. *Blake*, 36 N. J. Law, 442, 443, 447.)    The Legislature has power to tax or to delegate such power to a political division of the State, or to compel that division to tax, to raise money to pay a legal, equitable or moral claim. (*Guilford* v. *Suprs. of Chenango*, 13 N. Y., 143; *Weismer* v. *Village of Douglas*, 64 id., 91–100; *People* v. *Nearing*, 27 id., 306; *Buff. Un. Iron Works* v. *Buffalo*, 13 Abb. [N. S.], 141; *State* v. *Newark*, 3 Dutch., 186.)

*Charles E. Miller & A. B. Johnson*, for respondent. The city officials in constructing the drain committed a trespass, for which no assessment could be laid. (*People* v. *Nearing*, 27 N. Y., 306; *People* v. *Haines*, 49 id., 587; *Matter of Rhinelander*, 68 id., 105; *Matter of Ryers*, 72 id., 1.) The act of 1871 (chap. 566) was unconstitutional, because it made no provision for compensating the owners for the land taken. (*People* v. *Nearing*, 27 N. Y., 306; *Hartwell* v. *Armstrong*, 19 Barb., 166; *Gilbert* v. *Foote*, cited in *White* v. *White*, 5 Barb., 483.) The power exercised under the act of 1871 is not a police power, but the exercise of the right of eminent domain. (*Hartwell* v. *Armstrong*, 19 Barb., 166, 171, 176; Dillon on Munic. Corp., § 93; *In re Ryers*, 72 N. Y., 1; *Clark* v. *Mayor*, etc., 13 Barb., 32.) The objection of *laches* on the part of the petitioner could not be sustained. (*Ormsby* v. *Copper Mining Co.*, 56 N. Y., 623; *B'k of Commonwealth* v. *Mayor*, 43 id., 184; *Peyser* v. *Mayor*, 70 id., 497; *People* v. *Eggleston*, 13 How. Pr.,

123; *Weeks* v. *Merritt*, 5 Robt., 610; *Hallet* v. *Righters*, 13 How. Pr., 43; *Miner* v. *Beekman*, 14 Abb. [N. S.], 6.)

EARL, J.   The assessment assailed in this case was laid under chapter 566 of the Laws of 1871, an act " to provide for the proper drainage of lands within the corporate limits of the city and county of New York."   Section one of the act provides, that " whenever it shall appear to be necessary for the protection of the public health that any part or parcel of land within the corporate limits of the city and county of New York needs to be drained by other means than by sewers, and it shall be so certified by the city sanitary inspector, and said certificate is filed among the records of the board of health of the health department of said city, the said board shall direct that the same be done by and under the direction of the department of public works of said city and county."   Section two provides that " all parts and parcels of lands lying below the levels of the sewers adjacent thereto, upon which surface water remains stagnant, or through which water-courses have, or at present do run, may be so drained by a properly constructed blind drain, which shall be carried along such natural water-course, until it can be made to enter any sewer at its proper level, or if such sewer cannot be reached, it shall be carried to the adjacent river."   Section three provides for the assessment of lands benefited by the drain and the collection of such assessments.

In this case the drains for the expense of which this assessment was laid were constructed upon the lands of the petitioner and upon other lands, and the outlet of all the drains was through his lands into the Harlem river.   He testified (and his evidence was not disputed) that his land was dry ; that it had natural drainage, was in no way benefited by the drains ; and that he did not consent to their construction. It is not complained that the act was not strictly complied with in the construction of the drains and the laying of the assessment ; but the claim is that there is no provision in

the act for the acquisition of an easement in the lands, for the purpose of constructing and maintaining the drains, or for compensation to the owners of the lands, and that the city officials therefore, in the construction of the drains, committed a trespass for the expense of which no assessment could be laid ; and whether or not this claim is well founded, is the important question now to be determined.

These were not temporary drains for the removal of stagnant water, but permanent blind drains for the constant drainage of the lands through which they were constructed. They drained petitioner's lands not only, but other lands also through his. His lands, so far as they were used for these drains, were permanently appropriated for the use thereof. Can this be done without compensation or provision in the law for compensation to the owner ? We are of opinion that it cannot.

It can make no difference that the drains were required by the act to be blind drains. If the Legislature could authorize such drains to be constructed without compensation to the owner for the land taken, then it could authorize a surface drain or a sewer, for the same purpose, of any dimensions needed. If it could authorize such drains through a vacant lot, it could authorize them through a lot upon which buildings were standing, and the buildings could be interfered with for that purpose. It is only necessary to have a determination that a drain or a sewer is necessary for the public health, and the Legislature can authorize it to be built anywhere, and in any form and of any needed dimensions. But can it do this without compensation to the owner of the land taken ? It is conceded that it cannot by the exercise of the right of eminent domain, because whenever land is taken by virtue of that right, compensation must be made to the owner. But the claim is that land may be taken for drains under the police power without compensation. The police power possessed by the State, and conferred by it upon municipal corporations, is very broad and far reaching, and it is impossible to place upon it any precise

limitations.    By its exercise, in many cases rights of property and of person may be interfered with and largely impaired without any compensation.    Nuisances may be abated by private persons without any liability to damages, and by the public without making any compensation, because no one has the legal right to maintain a public nuisance.    In cases of actual necessity, as that of preventing the spread of fire, the ravages of a pestilence, the advance of a hostile army, or any other great calamity, the private property of any individual may be lawfully taken, used or destroyed for the general good, without subjecting the actors to personal responsibility.    In such cases, the rights of private property must be made subservient to the public welfare; and it is the imminent danger and the actual necessity which furnish the justification.    *Salus populi suprema lex.*    (*Plate Glass Co.* v. *Meredith*, 4 Penn. R., 774; Potter's Dwarris on Stat., 444; Cooley's Cons. Lim. [4th ed.], 713; Dillon on Mun. Cor., §§ 93, 95; Sedgwick on Cons. Law, 423, 473.)

It is under the police power that municipal corporations make ordinances to preserve health, prevent fires, regulate the use and storing of dangerous articles, establish and control markets, regulate the burial of the dead, and the like; and this police power may generally be exercised without making compensation for property and rights interfered with.    (*Commonwealth* v. *Alger*, 7 Cush., 84; *Presbyterian Church* v. *The Mayor, etc.*, 5 Cow., 538; *Vanderbilt* v. *The Mayor*, 7 id., 349; *Stuyvesant* v. *The Mayor*, 7 id., 588; *Van Wormer* v. *The Mayor*, 15 Wend., 262; *Meeker* v. *Van Rensselaer*, 15 Wend., 397.)    The interference with property under the police power may be justified in most cases by the application of the principle that one shall so use his own property as not to injure or endanger the property or health, or disturb unnecessarily the peace and comfort of his neighbor.    But there never can be any necessity under the police power or the law of necessity to permanently appropriate land to the public use without compensation.    It may temporarily be interfered with or appropriated; necessity

may justify so much ; but when the necessity passes away, the right ceases. To illustrate : A pond of stagnant water may endanger the health of the neighborhood, and the public may cause it to be drained at once, and for that purpose may dig the necessary drains, and the land may be interfered with for that purpose, under the police power, without compensation. But here there was no great emergency; no pestilence, no actual necessity. · This was a work carried on under a general law applicable to the city, looking to the future health and welfare of the city. It was a work not so much necessary for the lands of the petitioner as for other lands requiring drainage through his. It is believed that no case can be found justifying the permanent appropriation of land without compensation under such circumstances. That land cannot be thus taken is shown by the .following cases : *People* v. *Nearing* (27 N. Y., 306); *People* v. *Haines* (49 id., 587); *Matter of Rhinelander* (68 id., 105); *Matter of Ryers* (72 id., 1).

The statute of 1871, therefore, did not and no statute could confer authority to construct this drain through the land of the petitioner without his consent and without compensation to him for the land taken. The construction thereof was therefore a trespass, a wrongful act upon his land ; and an assessment to pay for the cost of the wrong cannot be legally laid. In other words, the petitioner ·cannot be compelled to pay for a trespass committed upon his land.

The order must therefore be affirmed, with costs.

All concur.

Order affirmed.